FILED
SEP 13 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MALCOLM WHITE, )
      Petitioner, )
)
v. ) Case No. 1:12cv378
)
SOUDABEH WHITE, )
      Respondent. )

## MEMORANDUM OPINION

This International Child Abduction Remedies Act ("ICARA")[1] case presents the post-judgment question—novel in this circuit—whether a prevailing respondent is entitled to the award of attorney's fees under ICARA. For the reasons that follow, the prevailing respondent is not entitled to the award of fees under ICARA, but is entitled to costs under Rule 54(d)(1), Fed.R.Civ.P.

I.[2]

Petitioner Malcolm White, a citizen of the United Kingdom, married Respondent Soudabeh White, a citizen of Switzerland and Iran, on May 4, 2009 in Geneva, Switzerland. Following the marriage, their child was born in Geneva and is a Swiss citizen. In June 2010, after little more than a year of marriage, Petitioner and Respondent separated, but remain married as of this time. On October 4, 2010, a Swiss court issued an order granting Respondent sole physical custody of the child. That court also granted Petitioner visitation and parental rights, and both parties have continued to exercise joint parental authority.

---

[1] ICARA, 42 U.S.C. §§ 11601 et seq., implemented the Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670 (the "Convention").

[2] Although this memorandum focuses chiefly on whether ICARA allows a prevailing respondent to recover fees, a brief recitation of the facts and proceedings in this case provides useful context.

In April 2011, Respondent left Switzerland with her child and entered the United States, both to visit her sister in the United States and to seek expert medical care for her child. The parties agree that at the time Respondent removed the child to the United States, Switzerland was the child's habitual residence. Since leaving Switzerland, Respondent and her child have lived continuously in the United States, save a single trip to Canada.

In Switzerland, physicians had diagnosed the child as suffering from autism and had also tentatively concluded that Respondent had psychiatric problems that exacerbated her child's condition. Respondent, dissatisfied with this diagnosis, and understandably concerned for her child's well-being, determined to seek an expert second opinion in the United States. Once there, she took her child to Children's National Medical Center in Washington, D.C., where expert specialists in feeding disorders concluded that the child did not suffer from autism, that treatment for autism was not indicated, but that the child suffered from a feeding disorder, which required a new course of treatment. Respondent testified that her child is responding positively to this new treatment regimen.

In September 2011, long after Respondent and her child had left Switzerland, Petitioner obtained an order from a Swiss court prohibiting the removal of the child from Switzerland. But soon thereafter, the Swiss Court of First Instance issued a ruling stating that because Switzerland was no longer the usual place of residence and no longer the domicile of Respondent, or the child, the court prohibiting removal of the child from Switzerland lacked jurisdiction to do so. The following February, yet another Swiss court confirmed that Respondent had sole physical custody of the child and further stated that as the holder of sole physical custody, she could remove her child from Switzerland without judicial authorization and over Petitioner's

objections. That court then determined that it too lacked further jurisdiction. Petitioner then filed this petition in April 2012.

Under the Convention, as implemented by ICARA, a court must order the return of a child to the place of habitual residence if a petitioner establishes "by a preponderance of the evidence . . . that the child has been wrongfully removed or retained within the meaning of the Convention." 42 U.S.C. § 11603(e)(1)(A). In order to prevail on his ICARA claim, Petitioner is required to prove by a preponderance of the evidence: (i) that the child was a habitual resident of Switzerland at the time of removal to the United States, (ii) that the removal was in breach of Petitioner's custody rights or parental authority rights under Swiss Law, and (iii) that Petitioner had been exercising those rights at the time of removal. *See Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001) (setting forth elements of an ICARA claim). As the Convention and ICARA make clear, even in circumstances where a child is wrongfully removed, a court may decline to order a child returned if "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Convention, art. 13b; 42 U.S.C. § 11603(e)(2)(A). Although Petitioner has the burden of proving the child's habitual residence and that removal was contrary to Petitioner's custodial rights, the burden is on Respondent to demonstrate by clear and convincing evidence that there is a grave risk to the child's safety if returned to the habitual residence. 42 U.S.C. § 11603(e)(2)(A).

At the promptly-held bench trial, Petitioner argued that the child was wrongfully removed from Switzerland and therefore that an order should issue requiring the return of the child to Switzerland. Specifically, Petitioner argued that although Respondent had the right of custody, she forfeited that right because her removal of the child from Switzerland was

unreasonable in the circumstances and hence wrongful. Respondent countered by arguing that the removal was not in breach of any rights under Swiss law and was reasonable in the circumstances. Alternatively, she argued that return of the child to Switzerland would expose the child to a grave risk of harm in view of the importance of the child's continuing medical treatment in the United States.

It is clear that under Swiss law the parent with the right of sole physical custody can remove the child from Switzerland without judicial authorization and over the objection of the other parent. In other words, there is no right of *ne exeat* [3] in Switzerland.[4] Instead, as the expert testimony at trial confirmed, under Swiss law a removal of a child is a violation of the other parent's rights only if a Swiss court forbids one parent from removing the child from the country because such a removal is an abuse of rights. At trial, the parties each testified and each submitted affidavits from experts in Swiss law, one arguing that the removal was an abuse of rights and the other arguing that the removal was not an abuse or violation of Swiss law. Respondent also presented an expert in Swiss law,[5] testifying by telephone and subject to cross-examination, who testified persuasively that the Respondent's removal of the child from Switzerland was lawful under Swiss law, as she had sole physical custody of the child at the time she and the child left Switzerland.

---

[3] A *ne exeat* right requires one parent to obtain the consent of the other parent prior to removing the child. *Abbott v. Abbott*, 130 S.Ct. 1983, 1988 (2010) ("In effect a *ne exeat* right imposes a duty on one parent that is a right in the other.").

[4] If there were a *ne exeat* right in Swiss law, then return of the child would be appropriate unless a respondent proved by clear and convincing evidence that an exception to the Convention applies. *See Abbott*, 130 S.Ct. at 1995–97.

[5] The record reflects that this lawyer, an experienced practitioner, is the expert on whose advice Respondent relied on in departing Switzerland for the United States with her child.

-4-

Following trial, a bench ruling issued finding that Petitioner failed to prove by a preponderance of the evidence that the removal of the child was in violation of Swiss law or for the purpose of frustrating Petitioner's right of access.[6]

## II.

Analysis of the fee question properly begins with recognition of the governing, well established general principle that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Svc. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *United Food and Commercial Workers, Local 400 v. Marval Poultry Co.*, 876 F.2d 346, 350 (4th Cir. 1989). Instead, an award of attorney's fees is proper only where specifically permitted by statute or where appropriate under the "inherent power in the courts." *Alyeska Pipeline Svc. Co.*, 421 U.S. at 259, 269; *United Food and Commercial Workers*, 876 F.3d at 350. When a district court relies on a statute to shift attorney's fees, such fee shifting "must be expressly provided for by statute, as, for example, under Title II of the Civil Rights Act of 1964[.]" *Alyeska Pipeline Svc. Co.*, 421 U.S. at 269. Likewise, district courts awarding fees pursuant to the inherent power of the court should do so only "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 259; *Kollsman, A Div. of Sequa Corp. v. Cohen*, 996 F.2d 702, 707 n.4 (4th Cir. 1993).

These principles, applied here, point persuasively to the conclusion that Respondent is not entitled to an award of fees under ICARA. This is so because ICARA, in § 11607, provides for fees only to a prevailing petitioner;[7] that section does not provide for fees to a prevailing

---

[6] Indeed, Respondent and her counsel confirmed that Petitioner was provided the opportunity to visit and see his child in the United States. Petitioner made no claim that he was prevented from seeing his child in the United States.

[7] Section 11607(b) provides in pertinent part that:

-5-

respondent, and indeed, does not even mention prevailing respondents. Thus, ICARA does not permit two-way fee shifting and it would be inappropriate under the circumstances presented here for a district court to award fees pursuant to its inherent powers. Importantly, § 11607's one-way fee shifting scheme comports with the purposes for awarding fees under ICARA, namely "'(1) to restore the [Petitioner] to the financial position he ... would have been in had there been no removal or retention; and (2) to deter such removal or retention' from happening in the first place." *Kufner v. Kufner*, C.A. No. 07-046 S., 2010 WL431762 at *2 (D.R.I. Feb. 3, 2010) (quoting *Fridlund v. Spychaj-Fridlund*, No. 5:09-273-JMH, 2009 WL 4168192 at *1 (E.D. Ky. Nov. 23, 2009).[8] Indeed, district courts in other circuits have declined to award attorney's fees to prevailing respondents under ICARA.[9] In denying attorney's fees to the prevailing respondent, one court explained that "[w]hile 42 U.S.C. § 11607(b)(3) directs that '[a]ny court ordering the return of a child ... shall order the respondent to pay necessary expenses incurred by ... the petitioner, including court costs [and] legal fees,'" there is "no such provision for a

---

(1) Petitioners may be required to bear the costs of legal counsel or advisors, court costs incurred in connection with their petitions, and travel costs for the return of the child involved . . . .
(2) [L]egal fees or court costs incurred in connection with an action brought under section 11603 of this title shall be borne by the petitioner unless they are covered by [legal assistance programs] . . . .
(3) Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

[8] *See also Text and Legal Analysis*, 51 Fed.Reg. 10494-01 (U.S. Dept. of State March 26, 1986).

[9] *See, e.g., Thompson v. Gnirk*, No. 12-cv-220-JL, 2012 WL 3598854 at *17 (D.N.H. Aug. 21, 2012); *accord De Vasconcelos v. De Paula Batista*, No. 4:10cv628, 2011 WL 806096 at *8 (E.D. Tex. Mar. 1, 2011) (requiring unsuccessful petitioner "to bear the costs incurred by the Court in hearing the action").

prevailing respondent[.]" *Thompson*, 2012 WL 3598854 at *17. Thus, it is clear that the fee shifting provision found in § 11607(b)(3) is only a one-way fee shifting provision.

Despite the presence of the one-way fee shifting provision in (b)(3), Respondent nonetheless argues that § 11607(b)(1) and (b)(2) should be construed to permit two-way fee shifting. This argument misconstrues these subsections. Instead of providing an additional basis for fee shifting, (b)(1) and (b)(2) are designed to save the United States from having to bear the costs associated with these provisions. Under Article 26 of the Convention, a member State "may not require any payment from the applicant towards the costs and expenses of the proceedings or . . . those arising from the participation of legal counsel or advisors" unless the member State makes a "reservation" under Article 42, declaring that it "shall not be bound to assume any costs . . . resulting from the participation of legal counsel . . . from court proceedings, except insofar as those costs may be covered by its system of legal aid[.]" Convention, art. 26. When the President submitted the treaty to the Senate for ratification, he did so with a reservation to Article 26, declaring that the United States would not bear the costs of petitioners. *See* 99 S. Treaty Doc. No. 11 at 2. In sum, subsections (b)(1) and (b)(2) do not pertain to fee shifting, but instead make clear that a petitioner, not the government, must bear the costs associated with petitions under ICARA unless that petitioner prevails, in which event fee shifting is triggered.

Finally, Respondent also argues that the award of attorney's fees in this case is proper under the inherent powers of a district court. Although district courts have the inherent authority to award attorney's fees, those courts should do so only "in the extraordinary circumstances where bad faith or abuse can form a basis for doing so." *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 543 (4th Cir. 2002) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

Because there has been no bad faith or abusive actions on the part of Petitioner—indeed, Petitioner's claims were not frivolous and were supported by some evidence, just not enough to carry the burden of proof imposed by § 11603—the award of attorney's fees to Respondent under the inherent power of a district court is inappropriate.

### III.

Analysis next turns to the question of costs. Rule 54(d)(1), Fed.R.Civ.P., provides that "[u]nless a federal statute . . . provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Because ICARA does not prohibit cost shifting, Rule 54(d)(1) gives rise to a "presumption that costs are to be awarded to the prevailing party." *See Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999); *Ellis v. Grant Thornton LLP*, 434 F.App'x 232, 234 (4th Cir. 2011). A district court should deny costs only if "there would be an element of injustice in a presumptive cost award." *Cherry*, 186 F.3d at 446. In determining an element of injustice, a district court should consider the following factors:

> (1) misconduct by the prevailing party; (2) the unsuccessful party's inability to pay the costs; (3) the excessiveness of the costs in a particular case; (4) the limited value of the prevailing party's victory; or (5) the closeness and difficulty of the issues decided.

*Ellis*, 434 F.App'x at 234 (citing *Cherry*, 186 F.3d at 446). Here, the only factor that weighs against awarding costs is the closeness of the issues decided; all other factors weigh in favor of awarding costs. Thus, costs are appropriately awarded in this case.[10]

---

[10] *C.f. Teague v. Baker*, 35 F.3d 978, 996 (4th Cir. 1994) (denial of costs appropriate where "plaintiffs had proceeded in good faith, that plaintiffs' case against [defendants] 'was, for the most part, a relatively close and difficult case,' . . . and on the ground that, given that plaintiffs were in general of modest means and had fallen victim to . . . fraud, 'it would be inequitable to tax the plaintiffs with the costs incurred by defendants'").

-8-

Although costs are properly awarded in this case, not all the claimed costs may be awarded. A district court may award only costs enumerated by 28 U.S.C. § 1920. Respondent seeks the award of the following costs:

> (a) $823.00 for translations of documents from French to English;
> (b) $764.25 for deposition transcripts;
> (c) $750.00 in fees for the deposition of the child's treating physician, Irene Chatoor;
> (d) $189.06 for couriers; and
> (e) $200.00 in administrative fees for copying, faxing, and scanning.

Significantly, three of the requested costs are not provided for by § 1920: (i) translation costs, (ii) courier costs, and (iii) administrative fees for copying, faxing, and scanning.

First, with respect to translation costs, the Supreme Court has recently held that "the category 'compensation of interpreters' in § 1920(6) does not include costs for document translation." *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S.Ct. 1997, 2007 (2012). Therefore, the translation costs sought cannot be awarded. Second, courier costs are not provided for by § 1920 and cannot be awarded. *See, e.g., Quesenberry v. Volvo Group N. Amer., Inc.*, No. 1:09cv00022, 2010 WL 2836201 at *12 (W.D. Va. July 20, 2010) (categorizing courier fees as "more properly considered part of the law firm's overhead or cost of doing business"). Third, although copying fees are permitted under § 1920, courts "have limited this, holding that 'photocopy charges are properly taxable only to the extent that the copies were used as court exhibits or were furnished to the court or opposing counsel.'" *Ford v. Zalco Realty, Inc.*, 708 F.Supp.2d 558, 563 (E.D. Va. 2010) (quoting *Bd. of Dir. v. Anden Group*, 135 F.R.D. 129, 138 (E.D. Va. 1991)). The "burden is on the party seeking recovery of photocopying costs to demonstrate the reasons for each copying charge." *Id.* Because Respondent failed to document that the expenses were for copies used as court exhibits or furnished to the court or opposing counsel, the charges for administrative fees for copying, faxing, and scanning cannot be awarded. Because costs cannot

properly be awarded for these three categories, the correct award in this case is one-thousand five-hundred fourteen dollars and twenty-five cents ($1,514.25), reflecting the cost of deposition transcripts and the cost of deposing the child's treating physician.

## IV.

In summary, Respondent's motion for the award of fees and costs must be granted in part and denied in part. It must be granted insofar as some of the claimed court costs are properly awarded pursuant to Rule 54(d)(1) and § 1920. In all other respects, the motion must be denied. Neither ICARA nor any other federal statute permits the shifting of attorney's fees to Respondent in this case and an award of attorney's fees is not appropriate in the circumstances under the inherent powers of a district court. Likewise, costs not enumerated by § 1920 cannot be awarded.

An appropriate Order will issue.

Alexandria, VA
September 13, 2012

/s/
T. S. Ellis, III
United States District Judge